UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                :

GLORIA JEAN DUCADY,              :
                        Plaintiff,   :
                                  :
         -against-          :
                                  :

CAROLYN W. COLVIN,          :
Acting Commissioner of Social Security,  :
                        Defendant.  :
                                  :
------------------------------------------------------------ X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 09/28/2016 |

15 Civ. 5887 (LGS) (KNF)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Gloria Jean Ducady filed this action against the acting Commissioner (the

"Commissioner") of the Social Security Administration (the "SSA"), seeking review of the final

decision of an Administrative Law Judge ("ALJ") denying her benefits under the Social Security

Act (the "Act").  Before the Court is the Report and Recommendation of Magistrate Judge Kevin

Nathaniel Fox (the "Report"), recommending that the Court grant Plaintiff's motion for

judgment on the pleadings and deny the Commissioner's cross-motion for judgment on the

pleadings.  The Commissioner objected to the Report, and Plaintiff filed a short response to the

Commissioner's objections.  For the following reasons, the recommendation to grant Plaintiff's

motion is adopted, the case is remanded to the SSA and the Commissioner's motion is denied.

**I.      BACKGROUND**

      The following facts are taken from the Report, the administrative record and the parties'

pleadings.

      Plaintiff suffers from chronic obstructive pulmonary disease ("COPD"), coronary artery

disease, diabetes mellitus and obesity.  Plaintiff alleges that she has been disabled since

September 19, 2011, and seeks both disability insurance benefits and Supplemental Security

Income benefits under the Act.

**A.      Plaintiff's Initial Application for Benefits**

On December 26, 2012, Plaintiff applied for disability benefits.  The SSA denied her application, and Plaintiff requested a hearing before an ALJ.  On December 5, 2013, Plaintiff represented herself in an administrative hearing before an ALJ to determine whether she is disabled within the meaning of the Act.

At the hearing, Plaintiff testified that she can stand for no longer than 15 minutes, has trouble walking long distances, must stop frequently when walking, has difficulty sitting for prolonged periods and has trouble carrying more than 5 pounds.  Plaintiff further testified that she does not believe she is capable of performing her past work as a Walmart cashier.  She did not describe her job duties in detail, but noted that cashiers no longer take the tray from the cash register to the accounting department.  She further stated that she applied to over 20 similar jobs after being fired by Walmart on September 19, 2011, and even volunteered to "put[] the stock up," but was never hired.  In addition, Plaintiff testified that she reads, listens to music, takes daily walks, watches television, performs housework slowly, pays bills, goes to the library once a week and occasionally cooks and shops with the help of her son.

As part of the disability determination process, Plaintiff submitted medical records from several treating physicians, including her cardiologist, pulmonologist and primary care physician.  The records from her cardiologist state that Plaintiff has coronary artery disease post myocardial infarction and had stenting performed in April 2009.  She has dyspnea with moderate activity, and had a normal nuclear stress test in 2012.  The records from her pulmonologist show that Plaintiff was diagnosed with COPD that is well-controlled by medication and that Plaintiff can walk two to three blocks and up stairs, but needs to stop due to shortness of breath.  The

records from her primary care physician show that Plaintiff is treated for multiple conditions including diabetes mellitus, obesity, coronary artery disease, COPD, renal insufficiency and anxiety disorder, is on a long list of medications and would greatly benefit from bariatric surgery.

Plaintiff did not submit any opinions from her treating physicians regarding their views on her alleged impairments and the effect of those impairments on her ability to work. At the hearing, the ALJ did not inform Plaintiff that such opinions were important to her case. The hearing also did not include any testimony from a vocational expert about what jobs Plaintiff can or cannot perform in light of her limitations, and whether she can perform her prior job as a cashier.

Following the hearing, Plaintiff was examined by two doctors at the request of the SSA -- a medical doctor and a psychologist. The record indicates that the consultative examinations were necessary because the "evidence as a whole . . . [was] not sufficient to support a decision on the claim." The medical doctor opined that Plaintiff had to avoid strenuous exertion and dust, smoke and noxious fumes. The psychologist opined that Plaintiff has a panic disorder but is capable of maintaining concentration and attention.

On January 28, 2014, the ALJ found that Plaintiff is not disabled. In making that determination, the ALJ conducted the five-step sequential analysis used by the SSA in determining disability. 20 C.F.R. §§ 404.1520, 416.920. At steps one and two, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of her disability and that Plaintiff has several severe impairments -- COPD, coronary artery disease, diabetes mellitus and obesity. At step three, the ALJ found that Plaintiff's impairments do not meet or equal a listed impairment, which would, without more, qualify her as disabled. The ALJ

then examined Plaintiff's residual functional capacity.  He found that Plaintiff has the residual functional capacity to perform light work provided she does not climb ropes, ladders or scaffolds; only occasionally has to stoop, kneel, crouch and climb stairs and ramps; and avoids respiratory irritants.  At step four, based on her residual functional capacity, the ALJ found that Plaintiff is capable of performing her past work as a cashier, which required only light physical exertion according to the Dictionary of Occupational Titles.  The ALJ therefore found that Plaintiff is not disabled within the meaning of the Act and denied her claims.

In reaching his conclusions at steps three and four, and in evaluating Plaintiff's residual functional capacity, the ALJ relied partly upon Plaintiff's medical records and the findings of the consulting medical doctor and consulting psychologist.  The ALJ also found significant that no treating, examining or non-examining medical source had made findings or rendered an opinion that Plaintiff's impairments were severe enough to qualify as a disability under the Act.

In determining her residual functional capacity, the ALJ also considered Plaintiff's appearance at the hearing and her testimony about her alleged symptoms and daily activities. The ALJ noted several reasons why he did not find Plaintiff's testimony about her symptoms to be wholly credible, including a lack of physician opinions indicating that Plaintiff is disabled and the fact that Plaintiff undertakes a wide range of daily activities.

### B.       Proceedings Before the Appeals Council

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council ("Appeals Council") on March 17, 2014.  For her appeal, Plaintiff submitted additional medical records and a questionnaire from her treating cardiologist, Dr. Hamroff, which were not before the ALJ when he made his decision.  Records dated April 9, 2014, show that Plaintiff has dyspnea with light activity and that Dr. Hamroff concluded that Plaintiff's dyspnea was not related to underlying

cardiac issues.  Dr. Hamroff's questionnaire provided Dr. Hamroff's opinion of Plaintiff's impairments from September 2011 to February 2015.

In the questionnaire, Dr. Hamroff stated that Plaintiff's experience of pain, fatigue or other symptoms would "frequently (from 1/3 - 2/3 of an 8-hour workday)" be severe enough to interfere with her attention and concentration, and that she needed to take hour-long rest breaks after each hour of work performed during a standard workday.  He also stated that Plaintiff's shortness of breath is likely to increase if she were placed in a competitive work environment. He further stated that Plaintiff is likely to be absent from work more than three times each month as a result of her impairments or treatment.  Dr. Hamroff also stated his belief that Plaintiff could perform a job in a seated position for half of an eight-hour workday, a job that required standing or walking for less than one hour each day and that she could lift or carry objects between 5 and 20 pounds "occasionally (up to one-third of an eight-hr. day)."  Dr. Hamroff's questionnaire did not provide any new laboratory or diagnostic test results that were absent from the original record.

On May 27, 2015, the Appeals Council issued a summary denial of the ALJ's decision and did not mention or discuss Dr. Hamroff's questionnaire.

### C.     Proceedings Before Judge Fox

Plaintiff filed a civil action in this Court seeking review of the ALJ's decision.  The case was referred to Judge Fox, and on November 18, 2015, Plaintiff moved for judgment on the pleadings on two grounds.  First, Plaintiff argues that remand is appropriate in light of (a) the ALJ's failure to develop the record fully and (b) the weight of the new medical evidence provided to the Appeals Council.  Second, Plaintiff argues that the ALJ did not properly evaluate her credibility, in part because the ALJ found it significant that no treating or examining source

found her to be disabled.

The Commissioner opposes Plaintiff's motion, cross-moves for judgment on the pleadings and contends that the ALJ's decision is supported by substantial evidence in the record, including the medical assessments provided by the consultative examiners, the medical records that Plaintiff provided, and Plaintiff's statements about the wide range of activities in which she normally engages.  The Commissioner further contends that the ALJ did not need to develop the record because it already contained significant evidence supporting his assessment of Plaintiff's capabilities.  In addition, the Commissioner argues that Dr. Hamroff's questionnaire does not support remand because it conflicts with the other evidence in the record and because the Appeals Council already considered the questionnaire and determined that it did not invalidate the ALJ's decision.

On April 8, 2016, after considering both motions, Judge Fox issued the Report.  The Report recommends that Plaintiff's case be remanded to the SSA so that the agency can re-examine her case with the benefit of the additional medical information submitted to the Appeals Council.  In reaching that conclusion, the Report relies upon 42 U.S.C. § 405(g), which permits a court to "order additional evidence to be taken before the Commissioner" following a showing that there is new, material evidence in the case and that "there is good cause for the failure to incorporate that evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).

The Report finds that the additional information submitted to the Appeals Council is new and material.  The Report also finds that Plaintiff had good cause for her failure to present the new evidence to the ALJ, in part because the ALJ did not inform Plaintiff about the importance of a treating physician's opinion in the disability determination.  Given that Plaintiff both submitted new and material evidence and had good cause for her failure to do so before the ALJ,

the Report recommends remanding the case so that the ALJ can weigh the new evidence in the first instance.

### D.    The Commissioner's Objection

The Commissioner objects to the Report on the ground that it relies on 42 U.S.C. § 405(g) in evaluating Plaintiff's request for remand, rather than 20 C.F.R. §§ 404.970(b) and 416.1470(b).  The Commissioner argues that Section 405(g) is inapplicable because the Appeals Council considered the new evidence from Dr. Hamroff when it denied review.  Thus, the Commissioner contends that the evidence was already incorporated into the record in a prior proceeding and Section 405(g) does not apply.

The Commissioner argues that the Report should have reviewed the entire administrative record and considered whether the new evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence."  *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010).  Under this standard, the Commissioner contends that Dr. Hamroff's questionnaire is insufficient to make the ALJ's decision contrary to the weight of the evidence.

## II.   LEGAL STANDARD

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 72(b)); *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985).

"If a party timely objects to any portion of a magistrate judge's report and

recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)).

## III.   DISCUSSION

### A.   Standard for Evaluating Plaintiff's Claims

The Commissioner is correct that the Report incorrectly applied 42 U.S.C. § 405(g) in evaluating Plaintiff's claims.  In evaluating whether the ALJ's decision should be upheld, the Court reviews the ALJ's decision to determine if the administrative record contains "substantial evidence" supporting the decision.  *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).

SSA regulations establish a five-step process for determining when to grant a disability claim.  At step one, the agency will find that a claimant is not disabled under the Act unless the claimant shows that she is not engaging in "substantial gainful activity."  At step two, the agency will find that a claimant is not disabled under the Act unless the claimant shows that she has a severe impairment that significantly limits her ability to do basic work activities.  At step three, the agency determines whether the impairment meets or equals the severity of a listed impairment.  If so, the claimant is disabled.  If the claimant's impairment does not meet or equal a listed impairment, the agency then determines the claimant's residual functional capacity, or those tasks that claimant can still perform despite the limitations imposed by her impairment.

The agency then turns to step four to consider "whether the claimant's residual functional capacity permits [her] to return to [her] past relevant work." If so, the claimant is not disabled. If the claimant cannot return to past relevant work, the test proceeds to step five, where the agency determines whether the claimant "can do other work existing in significant numbers in the national economy" based on her residual functional capacity and other vocational factors. 20 C.F.R. §§ 404.1520; 404.1560(c), 416.920; *Lesterhuis*, 805 F.3d at 86 n.2.

In cases where the Appeals Council denies review of an ALJ's decision, the ALJ's decision is the final action of the Commissioner. *See Lesterhuis*, 805 F.3d at 87 (citing *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)). Any challenges to the Commissioner's decision in such circumstances are therefore challenges to the ALJ's decision. In evaluating whether the ALJ's decision should be upheld, the Court reviews the ALJ's decision to determine if the administrative record contains "substantial evidence" supporting the decision. *See id.* "Substantial evidence" requires "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court must make that determination based upon the entire administrative record, which can include new evidence that was not before the ALJ at the time he made his decision. Where a claimant submits new evidence to the Appeals Council following an ALJ's decision, that evidence "becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision" if the evidence is new, material and relates to the period on or before the ALJ's decision. *Id.*

**B.      The Specific Questions at Issue in this Case**

The new evidence that Plaintiff submitted to the Appeals Council is properly part of the

administrative record.  *See id.*  The medical records and questionnaire from Plaintiff's treating physician are both new and material to Plaintiff's case -- the ALJ denied her initial request for benefits after finding it significant that no treating physician found Plaintiff impaired within the meaning of the Act, and Dr. Hamroff's opinion conflicts with the ALJ's determination that Plaintiff is capable of doing light work.  20 C.F.R. §§ 404.1567, 416.967.[1]  Thus, the Court considers whether the entire administrative record -- including Dr. Hamroff's questionnaire -- provides substantial evidence to support the ALJ's decision.  *See Lesterhuis*, 805 F.3d at 87.

The ALJ's decision found that Plaintiff is not disabled because she does not have impairments that meet or equal a listed impairment and can perform light work, including at her former job as a cashier.  The issues in this case are therefore whether these conclusions are supported by substantial evidence in the full administrative record.  *See id.* at 85-86 (examining individual conclusions in ALJ's decision that led to determination that plaintiff was not disabled).

### C.   The ALJ's Application of the Five-Step Sequential Evaluation for Determining Benefits

#### i.   Steps One and Two

At steps one and two of the five-step test, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of her disability and that Plaintiff has several severe impairments.  There is no objection to the ALJ's conclusions at steps one and two, and nothing in the record suggests that they are incorrect.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . . ."

### ii.    Step Three

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of a listed impairment.  In explaining his determination, the ALJ stated that no treating, examining or non-examining medical source made findings or rendered an opinion that Plaintiff's impairments are the medical equal of a listed impairment.  The ALJ also stated that he gave careful consideration to the applicable sections of the SSA regulations detailing listed impairments in determining that Plaintiff's impairments do not meet or equal a listed impairment.

Plaintiff does not challenge the ALJ's finding that she does not have an impairment that meets or equals a listed impairment.  Dr. Hamroff's opinion describes the effect of Plaintiff's symptoms on a wide variety of possible work activities.  It does not address whether Plaintiff's impairments meet or equal a listed impairment.  Thus, the ALJ's determination at step three remains supported by substantial evidence in the record in spite of Dr. Hamroff's opinion.

### iii.    Residual Functional Capacity and Step Four

Because the ALJ found that Plaintiff was not disabled at step three, the ALJ next determined Plaintiff's residual functional capacity.  The ALJ concluded that Plaintiff has the residual functional capacity to perform light work, so long as Plaintiff does not climb ropes, ladders or scaffolds and avoids respiratory irritants.  Light work is defined in the SSA regulations as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  Jobs in this category require "a good deal of walking or standing" or involve "sitting most of the time with some pushing and pulling of arm or leg controls."  To be considered capable of performing light work, a claimant "must have the ability to do substantially all of these activities."  20 C.F.R. §§ 416.967, 404.1567.  At step four, the

ALJ found that because Plaintiff is capable of doing light work, she is capable of performing her past work as a cashier.

In contrast, Dr. Hamroff opines that Plaintiff can only occasionally lift or carry objects between 5 and 10 pounds (up to one-third of an eight-hour workday).  He further states that he believes Plaintiff could perform a job requiring standing and/or walking for less than one hour out of an eight-hour workday, and that Plaintiff could perform a job in a seated position for four hours out of an eight-hour workday.  Dr. Hamroff's opinion contradicts the finding that Plaintiff is capable of doing light work, including her past work as a cashier.  According to Dr. Hamroff's opinion, Plaintiff cannot do "substantially all" of the activities associated with light work, because she cannot frequently lift objects between 5 and 10 pounds and cannot tolerate a good deal of walking or standing.

As a treating physician, Dr. Hamroff's opinion is entitled to "controlling weight" so long as it is "well-supported by medically acceptable . . . techniques and is not inconsistent with the other substantial evidence [in the record]."  *Lesterhuis*, 805 F.3d at 88 (quoting 20 C.F.R. § 404.1527(c)(2)).  While the ALJ could determine that Dr. Hamroff's opinion is not entitled to controlling weight, that determination should be made by the agency and not the Court.  *See Lesterhuis*, 805 F.3d at 88.  *See also, e.g.*, *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008) (trial court and ALJ are not permitted to substitute their own view of the medical proof for the treating physician's in determining the severity of an impairment).

In light of the new evidence provided by Dr. Hamroff, the ALJ's conclusion that Plaintiff is capable of doing light work is no longer supported by substantial evidence in the record.  *See Lesterhuis*, 805 F.3d. at 88-89 (where treating physician's opinion, if credited, would change outcome of case, ALJ's decision was no longer supported by substantial evidence); *Ennis v.*

*Colvin*, 14 Civ. 6587, 2016 WL 284550, at *3 (W.D.N.Y. Jan. 25, 2016) (finding that ALJ's decision was not supported by substantial evidence where it was contradicted by opinion of treating physician that was submitted to the Appeals Council). The case therefore should be remanded for the ALJ to determine Plaintiff's residual functional capacity and whether Plaintiff is capable of employment in light of the evidence contained in the full administrative record.

The Commissioner's contention in the Objection that the new evidence is outweighed by the other evidence in the record is unpersuasive for the reasons discussed above. The determination of how much weight to give Dr. Hamroff's opinion "should be made by the agency in the first instance," and the Court should "refrain from 'affirming an administrative action on grounds different from those considered by the agency.'" *Lesterhuis*, 805 F.3d at 88 (quoting *Burgess*, 537 F.3d at 128); *see also Hoffman v. Colvin*, 14 Civ. 9089, 2016 WL 1275660, at *2 (S.D.N.Y. Mar. 31, 2016) (remanding case to ALJ for determination of disability onset date where opposing evidence existed regarding plaintiff's disability).

### iv.   Step Five

Because the ALJ found that Plaintiff was capable of doing her past work as a cashier, the ALJ did not reach step five of the five-step evaluation. If the ALJ determines on remand that Plaintiff is no longer capable of doing her past relevant work in light of the new evidence in the administrative record, the ALJ should consider enlisting the aid of a vocational expert in evaluating whether Plaintiff is capable of performing any job existing "in significant numbers in the national economy." 20 C.F.R. §§ 404.1520; 404.1560(c), 416.920.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED and the Commissioner's motion is DENIED. The case is remanded to the SSA for

further proceedings on the full administrative record.  The Clerk of Court is respectfully directed

to close the motions at Docket No. 12 and Docket No. 18, and to close this case.


Dated:  September 28, 2016
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE